UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| -v.- | 17 Cr. 118-6 (KPF) |
| HOWARD PATTERSON, | ORDER |
| Defendant. | |

KATHERINE POLK FAILLA, District Judge:

Defendant Howard Patterson has applied for compassionate release, in the form of immediate release to home confinement, pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Dkt. #237, 244).  In brief, Patterson contends that he is at an increased risk of contracting, or of having a greater reaction to infection from, the COVID-19 virus because of a pre-existing medical condition.  The Government opposes Patterson's motion.  (Dkt. #248).  As set forth in the remainder of this Order, the Court denies Patterson's motion for compassionate release.

## BACKGROUND

On May 8, 2017, Patterson was arrested on a criminal complaint that charged him with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, and aggravated identity theft, in violation of 18 U.S.C. § 1028A.  (Dkt. #1, 3, 4).  A superseding indictment was returned on May 11, 2017, charging Patterson and six co-defendants with these same offenses.  (Dkt. #30).  Patterson was initially released on bail conditions, but his bail was revoked on November 2, 2017, because of repeated episodes of non-compliance with these conditions.  (Dkt. #88 (transcript)).  One week later, on November 9, 2017,

Patterson pleaded guilty to Count One of the Indictment, the bank fraud conspiracy charge, pursuant to a plea agreement with the Government (Dkt. #84 (transcript)); in so doing, Patterson avoided a possible 24-month mandatory sentence for the aggravated identity theft offense charged in Count Two.

The Court sentenced Patterson on January 3, 2018. (Dkt. #107 (judgment), 112 (transcript)). Though the applicable Guidelines range was 10 to 16 months' imprisonment (Dkt. #112 at 37), the Court varied downward to a term of five months' imprisonment, which it ordered to be followed by a term of three years' supervised release, one condition of which was that Patterson participate in an in-patient drug treatment program (*id.* at 38).

Patterson commenced his term of supervised release in or about March 2018. The path to community re-entry was not a smooth one: In early 2019, Patterson began testing positive for the use of controlled substances, including marijuana; the Court did not revoke bail at that time, but allowed Patterson to obtain outpatient substance abuse treatment at a series of facilities, all seemingly without success. In October 2019, Patterson was arrested in Brooklyn pursuant to a traffic stop, and charged with vehicular and controlled substance offenses. Patterson then failed to disclose his arrest in a timely fashion to his supervising probation officer.[1] The Probation Office outlined

---

[1] The Court was advised by defense counsel that the charges were later dismissed. (Dkt. #236).

these and other putative violations of the conditions of Patterson's supervised release in a memorandum dated December 26, 2019.

On January 29, 2020, the Court held a hearing to discuss Patterson's alleged violations of the terms of his supervised release. (Dkt. #236 (transcript)). After arraigning Patterson on the specifications listed in the December 26 violation memo (*id.* at 3-4), the Court heard argument on the Government's motion to remand Patterson, which motion the Court ultimately granted (*id.* at 30-31). On February 10, 2020, Patterson admitted to specifications 6, 7 and 8 of the December 26 violation memo — which addressed his use of a controlled substance, his failure to participate in substance abuse treatment, and his failure to make a good-faith effort to pay restitution, respectively — after which the Court revoked Patterson's term of supervised release, sentenced him to an aggregate term of six months' imprisonment, and reimposed a term of supervised release of one year. (Dkt. #223 (judgment), 233 (transcript)). Patterson is currently serving his sentence at the Metropolitan Correctional Center (the "MCC") in New York, New York.

On April 15, 2020, Patterson filed a counseled motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A); in the alternative, Patterson requested a modification of his supervised release conditions pursuant to 18 U.S.C. § 3583(e)(4). (Dkt. #237). Also in the motion, Patterson related that he had submitted a compassionate release request to the BOP on April 2, 2020. (*Id.*). The Government filed an opposition letter brief on April 17, 2020; it argued that Patterson had not properly exhausted his administrative remedies,

3

that his request should be denied on the merits, and that the Court lacked the authority to implement modifications to Patterson's sentence pursuant to 18 U.S.C. § 3583(e)(4).  (Dkt. #239).  The Court issued an Order dated April 20, 2020, agreeing with the Government that Patterson had not exhausted his administrative remedies and disclaiming any ability to effectuate Patterson's request for modification pursuant to 18 U.S.C. § 3583(e).  (Dkt. #242).

By letter motion dated May 5, 2020, Patterson renewed his request for compassionate release, in the form of immediate release to home confinement for the remainder of his prison term, to be followed by his one-year term of supervised release.  (Dkt. #244).  In relevant part, Patterson argued that in light of his "pre-existing and well-documented asthma condition, and the inherent difficulties involved in receipt of medically appropriate care while in BOP custody, there exists an unacceptable likelihood that Mr. Patterson's life and health will suffer if relief is not granted."  (*Id.* at 2; *see also* Dkt. #249 (reply brief)).  The Government continues to oppose Patterson's request.  (Dkt. #248).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant.  A defendant may move under § 3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the

4

defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When considering an application under § 3582(c)(1)(A), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In making this determination, the court must consider the "the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable." *Id.* § 3582(c)(1)(A). "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

Congress has delegated responsibility to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). The Sentencing Commission has determined that a defendant's circumstances meet this standard, *inter alia*, when the defendant is "suffering from a terminal illness" or a "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or if, in the judgment of the BOP, the defendant's circumstances are extraordinary and compelling for "other reasons." U.S.S.G. § 1B1.13(1)(A) & Application Note 1(A), (D). Following the passage of the First Step Act, courts may independently determine whether such "other reasons" are present in a

5

given case, without deference to the determination made by the BOP.  *See United States* v. *Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020).  In addition, the Sentencing Commission counsels that a court should reduce a defendant's sentence only after determining that "[t]he defendant is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).

## DISCUSSION

Patterson's motion is properly before the Court because more than 30 days have elapsed since the date of his compassionate release request to the Warden.  The issue at hand is whether Patterson has identified "extraordinary and compelling reasons" warranting his release.  The Court finds that he has not.

As noted, Patterson argues that the conditions of his incarceration at the MCC place him at a high risk of contracting COVID-19, because of the nature of his confinement at the facility, his existing asthma condition, and the claimed inability of prison staff to handle the outbreak.  The Court recognizes, as do the parties, that sister courts in this District have granted, and denied, compassionate release motions based on the existence of the COVID-19 pandemic and the risks of its transmission at prisons.  (*See, e.g.*, Dkt. #249 at 2 (defense listing of cases granting compassionate release to inmates with asthma)).  This Court aligns itself with those courts that have found "that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age

6

or *serious underlying health conditions* that place a defendant at greater risk of negative complications from the disease." *United States* v. *Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) (emphasis added) (collecting cases); *see also United States* v. *Brady*, No. 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) ("Instead, compassionate release motions amid the COVID-19 pandemic have required a 'fact-intensive' inquiry, made in the 'unique circumstances' and 'context' of each individual defendant.  In practice, courts in this district have considered the age of the prisoner; the severity and documented history of the defendant's health conditions, as well as the defendant's history of managing those conditions in prison; the proliferation and status of infections in the prison facility; the proportion of the term of incarceration that has been served by the prisoner; and the sentencing factors in 18 U.S.C. § 3553(a), with particular emphasis on the seriousness of the offense, the deterrent effect of the punishment, and the need to protect the public." (internal citations omitted)).

    Patterson has not demonstrated the existence of extraordinary and compelling circumstances in his case.  Patterson is 28 years old, an age at which he faces a comparatively low risk of hospitalization or death from COVID-19.  *See* Weekly Updates by Select Demographic and Geographic Characteristics, CENTER FOR DISEASE CONTROL, https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm#AgeAndSex (accessed May 19, 2020).  And while it is true that Patterson has a documented history of asthma, the severity of that condition is unclear.  In connection with

7

the preparation of his Presentence Investigation Report, Patterson related that (i) he had "no serious medical conditions"; (ii) his one hospitalization for asthma occurred more than a decade earlier, when he was 12 years old; and (iii) he managed his condition with an albuterol inhaler. (PSR ¶ 83). The Government has confirmed with BOP counsel that Patterson currently has an inhaler for his asthma at the MCC, and there is nothing to suggest that Patterson has been unable to care for himself or has been neglected by MCC medical personnel. (Dkt. #248 at 2). The CDC has identified only moderate to severe asthma as a comorbidity that elevates the likelihood of serious illness from COVID-19, and Patterson has not demonstrated either degree of severity. *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, People with Moderate to Severe Asthma, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (accessed May 20, 2020).[2]

---

[2]  *See also United States* v. *Garcia*, No. 16 Cr. 719-2 (RJS), 2020 WL 2539078, at *2 (S.D.N.Y. May 19, 2020):

> First, the Court is skeptical that by merely alleging that he "has asthma, ... is in prison, and [that] there is a COVID-19 outbreak nationwide," Garcia presents the type of "extraordinary and compelling reasons" that demand relief. *See United States* v. *Rodriguez*, No. 16-cr-167 (LAP), 2020 WL 1866040, at *4 (S.D.N.Y. Apr. 14, 2020) (rejecting a similar compassionate release motion). Indeed, the Court has only limited information about the severity of Garcia's asthma and is also mindful that the MDC and other federal detention facilities are undertaking steps to minimize the danger COVID-19 poses to inmates (Gov't Ltr. at 4-5 (describing those steps)). *See, e.g., United States* v. *Lynch*, No. 20-cr-202 (LAP), 2020 WL 2145363, at *3 (S.D.N.Y. May 5, 2020) (denying bail where the defendant "proffer[ed] no medical complications that he ha[d] experienced ... as a result of his asthma" and where "the [g]overnment ... detailed the steps taken by [the] Bureau of Prisons in general and the MCC in particular to minimize the effect of COVID-19"); *United States* v. *Belle*, No. 18-cr-117 (VAB), 2020 WL 2129412, at *5 (D. Conn. May 5, 2020) (holding that the mere fact

Although the Court is appropriately concerned by Patterson's arguments about the conditions at MCC (*see* Dkt. #249 at 2-3), it has also considered the BOP's Pandemic Influenza Plan, *see* https://www.bop.gov/coronavirus/ (accessed May 19, 2020), and the MCC's own statements about its protocols for managing COVID-19 infections (Dkt. #248-1).  It concludes on balance that the danger that Patterson faces from infection with COVID-19, even accounting for his asthma, does not amount to an extraordinary and compelling reason for granting compassionate release.  *Cf. United States* v. *Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia.  But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Separately, the factors set forth in 18 U.S.C. § 3553(a) counsel against granting Patterson's motion.  Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant."  *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C).  Patterson was charged with participating in a significant identity theft ring, and negotiated a plea offer from the Government that avoided a two-year sentence of imprisonment.  Even then,

---

that a defendant has asthma is not enough to demonstrate that he is at severe risk from COVID-19 should he remain incarcerated).

9

Patterson frequently did not take this case seriously — as evidenced, for example, by his decisions to engage in repeated violations of his conditions of pretrial release and of supervised release.  Thus, the Court finds that the § 3553(a) factors weigh against granting Defendant's motion.[3]

## CONCLUSION

For the foregoing reasons, Defendant Patterson's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is DENIED.  The Clerk of Court is directed to terminate the motion at docket entry 244.

SO ORDERED.

Dated:  May 21, 2020
         New York, New York

KATHERINE POLK FAILLA
United States District Judge

---

[3] Patterson may, of course, pursue relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP.  The decision to grant that relief, however, is reserved to the discretion of the BOP.